UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN WILBANKS, | No. 2:21-cv-0026 KJM KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIOINS |
| T. TAPPEN, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding pro se and in forma pauperis. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff's second amended complaint is before the court.

As discussed below, the undersigned recommends that this action proceed solely as to plaintiff's Eighth Amendment claim alleging defendant Tappen used excessive force, and the remaining claims against the remaining defendants be dismissed without prejudice.

II. Screening Standards

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

The Civil Rights Act

To state a claim under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d

930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011). However, vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

III. Discussion

    A. Use of Force Claims

In his first claim, plaintiff alleges defendant Tappen used excessive force against plaintiff on July 3, 2018, by shooting plaintiff three times with mini-14 rounds, hitting plaintiff in the left shoulder, and through his face and top of his head. Plaintiff sustained major injuries which required facial reconstructive surgery. By separate order, the undersigned orders service of process on defendant Tappen.

In the defendants' section, plaintiff adds that defendant Jeff Lynch, Warden, "oversees the training of all officers who work at CSP Sacramento;" and defendant Z. Sanchez, Secretary of CDCR, "oversees all training for all officers in California prisons." (ECF No. 16 at 2.)

A supervisor's failure to train or supervise subordinates may give rise to individual liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come in contact. See Canell v. Lightner, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under a failure to train theory, a plaintiff must allege

sufficient facts that the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (to establish failure to train, a plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need." (citation and internal quotation marks omitted)).

As stated above, vague and conclusory allegations concerning the alleged failure to train by supervisory personnel, such as the warden and the secretary, are insufficient. Ivey, 673 F.2d at 268. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

Plaintiff's conclusory statements that defendants Lynch and Sanchez "oversee training" are insufficient to state cognizable civil rights claims. Plaintiff included no additional factual allegations as to defendants Lynch or Sanchez in the second amended complaint. Plaintiff has been given two opportunities to provide additional factual support for his claims against defendants Lynch and Sanchez, but plaintiff has not done so. (ECF Nos. 7, 14.) Thus, the undersigned recommends that defendants Lynch and Sanchez be dismissed.

B. Medical Claims

In his second claim, plaintiff alleges that myriad medical professionals, including some staff who reviewed medical appeals, failed to provide proper medical care to plaintiff in violation of the Eighth Amendment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

(2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). A difference of opinion between an inmate and prison medical personnel -- or between medical professionals -- regarding the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Here, just as plaintiff did in his first amended complaint, plaintiff names myriad defendants at U.C. Davis, California Health Care Facility in Stockton ("CHCF"), Folsom State Prison in Represa ("FSP"), Pelican Bay State Prison in Crescent City ("PBSP"), and California State Prison, Sacramento ("CSP-SAC"), yet fails to provide specific factual allegations as to each named defendant. Specifically, plaintiff fails to set forth facts demonstrating that each defendant was deliberately indifferent to plaintiff's serious medical needs. For example, plaintiff alleges that medical staff at U.C. Davis released plaintiff 48 hours after major facial reconstructive surgery, but fails to explain how such release constituted deliberate indifference. (ECF No. 16 at 4.) Plaintiff claims that medical staff at CHCF failed to provide proper medical care due to the excruciating pain plaintiff suffered after his injury and all the reconstructive surgery, and then

5

refers the reader to his attached list of defendants. (ECF No. 16 at 4.) However, not all of the defendants listed as employed at CHCF are doctors or medical staff, and as to those who are doctors, plaintiff simply states "denied plaintiff medical care," or "neglected to provide medical care." (ECF No. 16 at 6.) Such conclusory statements are insufficient to state a claim. Plaintiff claims that medical staff at Folsom State Prison provided plaintiff no medical care after surgery, and claims he was left in a cell bleeding from his nose for a month in pain, "specifically defendant (Dr. Borges)." (ECF No. 16 at 4.) Dr. Borges, a physician at Folsom State Prison, is listed as the fourteenth defendant, but plaintiff fails to explain Dr. Borges' role in plaintiff's retention in his cell; for example, if plaintiff was provided no medical care, how was Dr. Borges aware of plaintiff's bleeding nose? Finally, plaintiff alleges that Dr. James Yee at U.C. Davis performed nose reconstructive surgery without anesthetics while plaintiff was awake, "scraping the skin and bone causing excruciating pain." (ECF No. 16 at 9.) While such allegation might be conceivable, absent facts not alleged here, the undersigned cannot conclude that such allegation is plausible. Iqbal, 556 U.S. at 680.

Moreover, while plaintiff does not set forth dates of the treatment provided, it appears that his medical treatment spans a lengthy period of time and he challenges different types of medical treatment, from major facial reconstruction surgery, to failure to adequately treat plaintiff's complaints of pain, to failure to schedule medical appointments. Absent specific facts not provided here, the court is unable to determine whether plaintiff can state cognizable Eighth Amendment claims against each named defendant. Plaintiff's generalized allegations concerning the lack of proper medical care by most of the named defendants (ECF No. 16 at 6-9) are too vague and conclusory for the court to determine whether plaintiff can state a cognizable Eighth Amendment claim as to each named defendant.

For all of the above reasons, the undersigned recommends that such claims and defendants be dismissed without prejudice.

C. Retaliation Claims

In his third claim, plaintiff states that all criminal charges were dropped on October 25, 2018, case No. SAC-FAC-18-07-0694, by District Attorney Schubert. (ECF No. 16 at 5.) On

December 20, 2018, plaintiff filed his administrative appeal alleging excessive force, "and the following retaliatory tactics were done: (1) CHCF medical staff cleared plaintiff for release knowing he had pending facial surgeries; (2) District Attorney Harry "picked back up" criminal case No. SAC-FAC-18-07-0694; (3) Members of plaintiff's institution classification committee ("ICC") at FSP put plaintiff up for transfer to PBSP segregated housing unit ("SHU") with a detainer for court in Sacramento and future follow-ups by surgeon in Sacramento; (4) plaintiff was shackled for days in transfers subjecting him to pain and suffering in face and shoulder; and (5) an ICC at Deuel Vocational Institution ("DVI") labeled plaintiff special needs yard ("SNY") during transfers. (ECF No. 16 at 5.)

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). If plaintiff intends to assert a retaliation claim, he must specifically identify the protected conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action[1] was taken "because of" plaintiff's protected conduct.[2]

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994); Rizzo v.

---

[1] For purposes of evaluating a retaliation claim, an adverse action is action that "could chill a person of ordinary firmness from continuing to engage in the protected activity[ ]." Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006). See also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

[2] Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts. See Rhodes, 408 F.3d at 567. Prison officials may not retaliate against prisoners for exercising these rights. Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997); Bradley v. Hall, 64 F.2d 1276, 1279 (9th Cir. 1995).

Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). Thus, the burden is on plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. See Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("[Plaintiff] must show that there were no legitimate correctional purposes motivating the actions he complains of.").

Here, plaintiff identified his protected conduct as filing a grievance, and sets forth multiple actions, some of which could be construed as adverse to plaintiff. However, plaintiff fails to set forth facts demonstrating such alleged adverse actions were taken because of plaintiff's grievance, and that such actions chilled the exercise of his First Amendment rights, and that such adverse actions did not reasonably advance a legitimate correctional goal. In order to state cognizable retaliation claims, plaintiff must allege facts addressing each prong of Rhodes as to each named defendant. Plaintiff failed to do so.

Importantly, plaintiff does not identify where he filed his administrative appeal raising excessive force. (ECF No. 16 at 5.) Presuming he filed his grievance at CSP-SAC, where his injuries were sustained, plaintiff fails to explain how CHCF medical staff, District Attorney Harry, or ICC committee members at FSP and DVI were aware of the grievance plaintiff filed at CSP-SAC in December of 2018. Other than plaintiff's conclusory statement that such adverse actions were retaliatory, plaintiff includes no facts suggesting such adverse actions were taken because plaintiff filed such grievance. See Pratt, 65 F.3d at 807 (a prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right). Plaintiff alleges such actions were taken after plaintiff filed his grievance, but that alone is not enough to show a retaliatory motive. Speculation is insufficient, see Bell Atlantic, 550 U.S. at 555, and in reviewing retaliation claims, courts have cautioned against "engag[ing] in the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this.'" See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (quoting see, e.g., Choe v. INS, 11 F.3d 925, 938 (9th Cir. 1993) (Alarcon, J., concurring and dissenting) (discussing post hoc, ergo propter hoc).

8

Rather, plaintiff must allege specific facts demonstrating the nexus between the protected conduct and the alleged adverse action.

For all of the above reasons, plaintiff fails to state cognizable retaliation claims.

D. No Leave to Amend

Leave to amend need not be granted when amendment would be futile. Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The failure to cure deficiencies previously identified supports denial of further leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, plaintiff has been provided two opportunities to amend his pleading. (ECF Nos. 7, 14.) Despite the court's prior screening orders, plaintiff again filed a pleading containing multiple claims against thirty-two individuals at five different state prisons and U.C. Davis. While plaintiff named certain defendants within claims two and three, plaintiff did not name each defendant in the claim identifying the alleged constitutional violation, choosing instead to annotate his appended four page list of defendants with conclusory statements as to their alleged involvement in such violations, most of which lack any factual support. (ECF No. 16 at 6-9.)

Moreover, in both screening orders, plaintiff was cautioned that he "may not change the nature of this suit by alleging new, unrelated claims," and that "continued violation of court orders may result in the involuntary dismissal of this action." (ECF Nos. 7 at 7; 14 at 9-10, citing Fed. R. Civ. P. 20(a)(2), 41(b).) Plaintiff's original complaint solely challenged the use of force by defendant Tappen.[3] Thus, it is unclear plaintiff would comply with any further screening order.

Therefore, the undersigned finds that plaintiff's repeated failure to comply with the court's screening orders demonstrates it would be futile to again grant plaintiff leave to amend. This action should proceed solely on plaintiff's Eighth Amendment claim against defendant Tappen, and the remaining claims and defendants should be dismissed.

---

[3] Because plaintiff's newly-added claims do not arise from the same transaction, occurrence, or series of transactions or occurrences, and would not involve questions of law or fact common to all defendants, including defendant Tappen, it would also be inappropriate to grant leave to amend to include such claims in this action. Fed. R. Civ. P. 20(a)(2).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants Lynch and Sanchez be dismissed without prejudice;

2. This action should proceed solely on plaintiff's Eighth Amendment claim against defendant Tappen; and

3. The remaining Eighth Amendment medical claims, the First Amendment retaliation claims, and the remaining defendants be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 29, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wilb0026.56